IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01377-CMA-MEH

NANCY L. HENDERLONG,

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,

    Defendant.

---

**ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant's Motion for Protective Order [filed November 10, 2008; docket #19]. The matter is briefed and has been referred to this Court for resolution [docket #20]. Oral argument would not materially assist the Court in adjudicating this motion. For the reasons stated below, the Court orders Defendant's Motion for Protective Order is **denied**.

**I.    Background**

On February 17, 2003, Plaintiff sustained injuries resulting from an automobile accident. At that time, Plaintiff was insured by Defendant Allstate. The individual who allegedly caused the accident paid $25,000.00 in settlement to Plaintiff, and Plaintiff then filed an underinsured motorist (UIM) benefits claim to Defendant demanding $75,000.00. Plaintiff states Defendant offered her only $2,500.00, while Defendant states it offered $12,750.00.

Plaintiff filed this insurance contract action against Defendant on June 30, 2008, asserting Defendant under-evaluated her UIM claim in order to reduce its insurance obligation to Plaintiff. Plaintiff alleges claims for the reasonable value of the UIM benefits, bad faith breach of insurance contract, and outrageous conduct. Plaintiff believes Defendant's use of the Colossus software

program relied upon by Defendant to value her claim demonstrates Defendant's "widespread national practice of misusing the Colossus program in order to intentionally undervalue its insured's uninsured and underinsured motorist claims." (Docket #25 at 2.)

Defendant filed the present Motion to preclude Plaintiff from obtaining a copy of the Colossus valuations relating to Plaintiff. Defendant describes how Colossus "is a computer software program used by Allstate to assist with the claims evaluation process." (Docket #19 at 3.) Defendant argues Plaintiff's request for the Colossus evaluation constitutes "a request for the mental impressions, conclusions, opinions and legal theories of the defendant's representatives." (*Id.*)

**II.  Discussion**

The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). Such protection is warranted, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.").

The good cause standard of 26(c) is not met by conclusory statements. *Klesch & Co. Ltd. v. Liberty Media Corp.,* 217 F.R.D. 517, 524 (D. Colo. 2003). Instead, "the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to that moving party." *Id.* (citing *Exum v. United States Olympic Committee,* 209 F.R.D. 201, 206 (D. Colo. 2002)). As a general rule, the "good cause" calculation requires that the Court balance "the

[moving] party's need for information against the injury which might result from unrestricted disclosure." *Exum,* 209 F.R.D at 206 (citations omitted). Additionally, the Court should consider any privacy interests and whether the case implicates issues important to the public. *Id*.

Defendant contends that the Colossus valuation is protected from disclosure by the work product doctrine. Federal law governs such an issue. *Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). The Court addressed a similar situation in *Bishelli v. State Farm Mutual Auto. Ins. Co.*, 2008 WL 280850 (D. Colo. Jan. 21, 2008). In *Bishelli*, the Court examined two principles in determining whether to require production of the plaintiff's request, which the Court views as applicable to the matter at hand. The first principle deals with whether the work product doctrine would apply at all. On one hand, at some point an insurance company's activity shifts from claims evaluation to anticipation of litigation. Generally, this is the point at which assertion of the work product doctrine is tenable, given that the probability of litigating the claim is substantial and perhaps imminent. Even when applicable, however, the work product doctrine is not an absolute shield from disclosure. If the requesting party can meet the substantial need/undue hardship test, then the material is discoverable. *Frontier Refining, Inc.*, 136 F.3d at 704. Here, the undue hardship element is met, as it is quite apparent that the sought-after information is not available elsewhere.

The second principle (as long as the work product claim is colorable) is whether, in the context of an insurance bad faith case, Plaintiff can establish a substantial need for the material. The case for discoverability is much stronger when a bad faith claim is alleged and when the parties involved in the lawsuit are insured and insurer. "[A]llowing a plaintiff to overcome an insurer's work product privilege may be particularly appropriate in an action for bad faith, in light of the insurer's virtual monopoly over the evidence required to support such an action." *Logan v.*

3

*Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996).

> "In a bad faith insurance claim settlement case, the 'strategy, mental impressions and opinion of [the insurer's] agents considering the handling of the claim are directly at issue,' " and thus it is clear that "[u]nless the information is available elsewhere, a plaintiff may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim."

*Id.* (citations omitted).

As to Plaintiff's substantial need for the documents covered by the work product doctrine in the context of a bad faith claim, the Court believes it is incumbent upon the Plaintiff to allege a colorable claim of bad faith. In *Logan*, the district court required the insurance company to submit the documents for an *in camera* review to allow the Court to determine whether the documents show the *possibility* that they contain evidence of bad faith. Similarly, this Court ordered *in camera* review, in both *Bishelli* and the case presently before the Court. (Docket #32.) *In camera* review is particularly important to protect the integrity of the work product doctrine.

## III.  Analysis

The accident underlying this lawsuit occurred on February 17, 2003. Plaintiff filed suit on June 30, 2008. The Colossus report in dispute is dated September 6, 2007. The parties submitted no further information regarding the temporal point at which Defendant's claims evaluation shifted to anticipation of litigation, therefore the Court lacks adequate information to make a concrete determination of a date implicating the initiation of work-product protections. However, assuming *arguendo* in favor of Defendant, even if the work product doctrine indeed protects the Colossus evaluation in question, the Court concludes Plaintiff still meets the substantial need/undue hardship test.

After reviewing the Colossus report *in camera*, the Court finds, consistent with the case

4

law cited above, that Plaintiff has established a substantial need for the report by presenting a colorable claim for bad faith. The same adjustor employed by Defendant who evaluated Plaintiff's claim evaluated two other claims which also provoked litigation. Plaintiff cites to the adjustor's depositions in the two other similar cases, describing how the adjustor did not include "many medical diagnoses and medical treatments" in one evaluation, and how she conducted an evaluation in the other despite her lack of qualification. (*See* docket #25 at 2-3.) Furthermore, Plaintiff cites to documents "generated by Allstate" demonstrating Defendant's practice of using "an evaluation process that minimizes claims," potentially in violation of Defendant's duty of good faith to its insured. (*Id*. at 3-4.) Without commenting specifically on the merits of any such claim, the Court believes that the Colossus report and accompanying notes contain material of sufficient potential relevance to a claim of bad faith that they are discoverable.

**IV.   Conclusion**

For the reasons stated herein, Defendant's Motion for Protective Order [filed November 10, 2008; docket #19] is **denied**. Whether the Colossus valuation is admissible or can sufficiently support a claim for bad faith is a decision for the District Judge to consider and, potentially, the trier of fact. Accordingly, Defendant Allstate shall produce to Plaintiff the Colossus Evaluation and Evaluation Review Comments it submitted to the Court for *in camera* review on or before **January 16, 2009.** Plaintiff is reminded that in the likely event this material is designated as confidential by Defendant, the Court will be diligent in enforcing the provisions of the Protective Order [docket #31] as a means of minimizing any potential harm to Defendant's interests.

Defendant may retrieve the documents submitted for *in camera* review on or before **January 20, 2009**.

Dated at Denver, Colorado, this 13th day of January, 2009.

BY THE COURT:


 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge